# UNITED STATES DISTRICT COURT

### for the
Southern District of California

**FILED**

| In the Matter of the Search of | | |
|---|---|---|

*(Briefly describe the property to be searched or identify the person by name and address)*

One black Google Phone
Model: Pixel G-2PW2100
FP&F # 2019255200015401, Line Item 008

)
)
)
)
)
)

Case No.

**2 0 M J 8 2 2 9**

**2020 JAN 17 P 2: 36**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B-1, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Transportation of Certain Illegal Aliens |

The application is based on these facts:

See attached Affidavit of Agent Wenceslao Partida, U.S. Border Patrol

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Agent Wenceslao Partida, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **1/17/2020**

_____
*Judge's signature*

City and state: El Centro, CA

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

### ATTACHMENT A-1 (Target Telephone #1)

One black Google Phone
**Model:** Pixel G-2PW2100
**IMEI No:** N/A
**FP&F Number:** 2019255200015401
**Line Item:** 008





**Target Telephone #1** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B-1**

ITEM TO BE SEIZED

Authorization to search the **Target Telephone #1** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone #1** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 18, 2019 through July 19, 2019:

a. tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b. tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the target phone(s); or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, § 1324.**

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS**

I, Wenceslao Partida, United States Border Patrol BPA ("BPA"), United States Border Patrol ("USBP"), after being duly sworn, state:

**INTRODUCTION**

1.      I make this affidavit in support of an application for search warrants to search the following target property, as further described in Attachments A-1 and A-2 (collectively referred to herein as the "**Target Telephones**"), and seize evidence of violations of federal law, namely 8 U.S.C. § 1324, as further described in Attachments B-1 and B-2:

> One black Google Phone
> Model: Pixel G-2PW2100
> IMEI No: N/A
> FP&F Number: 2019255200015401
> Line Item: 008
> (**Target Telephone #1**)
>
> One Silver iPhone
> Model: A1522
> IMEI No: 355877068417577
> FP&F Number: 2019255200015401
> Line Item: 009
> (**Target Telephone #2**)

This search supports an investigation and prosecution of Vikram Anilkumar DESAI ("DESAI") and Christopher Lee KETTLER ("KETTLER") for the offense above.  A factual explanation supporting probable cause follows.

2.      The **Target Telephones** was seized on July 18, 2019, at the time that DESAI (**Target Telephone #2**) and KETTLER (**Target Telephone #1**) were arrested for transporting illegal aliens, in violation of 8 U.S.C. § 1324. **Target Telephone**, as described in Attachments A-1 and A-2 (incorporated herein by reference). The **Target Telephones** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.     I seek authority to search the **Target Telephones** for, and to seize evidence of, crimes, specifically, the transportation of illegal aliens in violation of 8 U.S.C. § 1324, as described in Attachments B-1 and B-2 (incorporated herein by reference).

4.     Based on the information below, there is probable cause to believe **Target Telephones** were used by DESAI and KETTLER to communicate with each other and other co-conspirators during an alien smuggling event, which occurred in the Southern District of California, and the device contain evidence relating to violations of 8 U.S.C. § 1324.

5.     Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Rather, it contains only those facts that are necessary to establish probable cause for the requested warrant.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

5.     I am a BPA with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since July 08, 2008, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

6.     I am currently assigned to the El Centro Sector Prosecutions Unit.  The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. The El Centro Sector Prosecutions Unit is also

1  tasked with investigating narcotics smuggling and bulk cash smuggling as it relates to
2  the presentation of these cases in federal jurisdictions.

3       7.     Through the course of my training, investigations, and conversations with
4  other law enforcement personnel, I am aware that it is a common practice for alien
5  smugglers to work in concert with other individuals and to do so by utilizing cellular
6  telephones and portable radios to maintain communications with co-conspirators in
7  order to further their criminal activities. I am also aware that it is a common practice for
8  alien smugglers to communicate with the smuggled aliens regarding smuggling
9  arrangements and payment utilizing cellular telephones and portable radios.
10  Conspiracies involving alien smuggling generate many types of evidence including, but
11  not limited to, cellular phone-related evidence such as voicemail and text messages
12  referring to the arrangements of travel and payment, names, photographs, text
13  messages, and phone numbers of co-conspirators and aliens to be smuggled.

14       8.     In preparing this affidavit, I have conferred with other BPAs and law
15  enforcement personnel who are experienced in the area of alien smuggling
16  investigations, and the opinions stated below are shared by them. Further, I have
17  personal knowledge of the following facts, or have had them related to me by persons
18  mentioned in this affidavit.

19       9.     Based upon my training and experience as a USBP BPA, and consultations
20  with other law enforcement officers experienced in alien smuggling investigations, and
21  all the facts and opinions set forth in this affidavit, I submit the following:

22             a.     Alien smugglers will use cellular telephones because they are
23                 mobile and they have instant access to telephone calls, text, web,
24                 and voice messages.

25             b.     Alien smugglers will use cellular telephones because they are able
26                 to actively monitor the progress of the illegal aliens while they are
27                 in transit.

28

c.   Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

d.   Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

e.   Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

f.   Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

g.   The use of cellular telephones by alien smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to, emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10.   Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that device.

11.   Additionally, based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs

from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience investigating these conspiracies, I have learned that searches of cellular/mobile telephones and/or other mobile communication devices yields evidence:

a.   tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d.   tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the target phone(s); or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12.   On December 19, 2019, I sought and received warrants from Magistrate Judge Ruth Bermudez Montenegro to search the **Target Devices**. *See* Exs. 1 and 2 (19MJ11928, 19MJ11929). I hereby adopt and incorporate those search warrants,

1   including my affidavit in support thereof, as part of my affidavit to search the **Target**
2   **Devices**.

3       13.   In brief, the **Target Devices** were seized from DESAI and KETTLER
4   incident to their arrests for alien smuggling on July 19, 2019.  DESAI was the driver
5   and registered owner of a GMC Yukon containing one alien and in the vicinity of 5
6   additional aliens, while stuck in the soft sand approximately 11 miles north of Evan
7   Hewes Highway and north of Plaster City.

8       14.   On August 15, 2019, DESAI and KETTLER waived indictment and were
9   charged in a six-count Information with Transportation of Certain Aliens, in violation
10  of 8 U.S.C. § 1324(a)(1)(A)(ii). *United States v. Desai*, 19-CR-03131-AJB, ECF No.
11  27. On August 29, 2019, KETTLER plead guilty to one count of transportation of
12  certain aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). *Id.* at ECF No. 37.

13      15.   On December 26, 2019, I submitted the **Target Devices** to a forensic
14  Cellebrite search pursuant to the search warrants attached as Exhibits 1 and 2
15  (19MJ11928 and 19MJ11929). During the analysis, I discovered that the **Target**
16  **Devices** were both pin locked.  The Cellebrite system used to search the phones did not
17  possess the technology to bypass the lock pursuant to the search warrants previously
18  executed.

19      16.   I have spoken with United States Border Patrol Agent Angel Madero and now
20  obtained access to advanced technology that was not available to at the original analysis
21  date.  With this advanced technology, a lock bypass of the **Target Devices** is possible. I
22  am therefore asking for the ability to forensically examine the **Target Devices** again, in
23  anticipation of the trial set in *United States v. Desai,* 19-CR-03131-AJB, on February 25,
24  2020.

25                              **METHODOLOGY**

26      17.   It is not possible to determine, merely by knowing the cellular telephones'
27  make, model and serial number, the nature and types of services to which the device is
28  subscribed and the nature of the data stored on the device.  Cellular devices today can

1   be simple cellular telephones and text message devices, can include cameras, can serve
2   as personal digital assistants and have functions such as calendars and full address books
3   and can be mini-computers allowing for electronic mail services, web services and
4   rudimentary word processing.  An increasing number of cellular service providers now
5   allow for their subscribers to access their device over the internet and remotely destroy
6   all of the data contained on the device.  For that reason, the device may only be powered
7   in a secure environment or, if possible, started in "flight mode" which disables access
8   to the network.  Unlike typical computers, many cellular telephones do not have hard
9   drives or hard drive equivalents and store information in volatile memory within the
10   device or in memory cards inserted into the device.  Current technology provides some
11   solutions for acquiring some of the data stored in some cellular telephone models using
12   forensic hardware and software.  Even if some of the stored information on the device
13   may be acquired forensically, not all of the data subject to seizure may be so acquired.
14   For devices that are not subject to forensic data acquisition or that have potentially
15   relevant data stored that is not subject to such acquisition, the examiner must inspect
16   the device manually and record the process and the results using digital photography.
17   This process is time and labor intensive and may take weeks or longer.

18       18.   Following the issuance of this warrant, I will collect the subject cellular
19   telephone and subject it to analysis.  All forensic analysis of the data contained within
20   the telephone and memory card(s) will employ search protocols directed exclusively to
21   the identification and extraction of data within the scope of this warrant.

22       19.   Based on the foregoing, identifying and extracting data subject to seizure
23   pursuant to this warrant may require a range of data analysis techniques, including
24   manual review, and, consequently, may take weeks or months.   The personnel
25   conducting the identification and extraction of data will complete the analysis within
26   90 days, absent further application to this Court.

27   //
28   //

7

# **CONCLUSION**

20.     Based on all of the facts and circumstances described above, there is probable cause to conclude that DESAI and KETTLER used **Target Telephones** to facilitate the transportation of illegal aliens in violation of 8 U.S.C. § 1324, and that evidence of that illegal activity committed by DESAI and KETTLER and other co-conspirators continues to exists on the **Target Telephones**.

21.     WHEREFORE, I request that the court issue warrants authorizing law enforcement BPAs and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Wenceslao Partida

U.S. Border Patrol BPA

Subscribed and sworn to before me this _17th_ day of January, 2020.

Honorable Ruth Bermudez Montenegro

United States Magistrate Judge

8

## ATTACHMENT A-1 (Target Telephone #1)

One black Google Phone
**Model:** Pixel G-2PW2100
**IMEI No:** N/A
**FP&F Number:** 2019255200015401
**Line Item:** 008





**Target Telephone #1** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2 (Target Telephone #2)

One silver IPhone
**Model:** A1522
**IMEI No:** 355877068417577
**FP&F Number:** 2019255200015401
**Line Item:** 009



**Target Telephone #2** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B-1**

### ITEM TO BE SEIZED

Authorization to search the **Target Telephone #1** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone #1** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 18, 2019 through July 19, 2019:

    a.    tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

    b.    tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

    d.    tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the target phone(s); or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, § 1324.**

## **ATTACHMENT B-2**

### ITEM TO BE SEIZED

Authorization to search the **Target Telephone #2** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone #2** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 18, 2019 through July 19, 2019:

a.     tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b.     tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d.     tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the target phone(s); or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, § 1324.**

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

### for the

#### Southern District of California

DEC 1 9 2019

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

One Silver iPhone, Model: A1522
IMEI #3 55877068417577
FPF # 2019255200015401, Line Item 009

Case No. **19MJ11928**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B-2, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Transportation of Certain Illegal Aliens |

The application is based on these facts:

See attached Affidavit of Agent Wenceslao Partida, U.S. Border Patrol

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Agent Wenceslao Partida, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/19/19__

*Judge's signature*

City and state: El Centro, CA

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2 (Target Telephone #2)

One silver IPhone
**Model:** A1522
**IMEI No:** 355877068417577
**FP&F Number:** 2019255200015401
**Line Item:** 009



**Target Telephone #2** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B-2**

ITEM TO BE SEIZED

Authorization to search the **Target Telephone #2** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone #2** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 18, 2019 through July 19, 2019:

a.   tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d.   tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the target phone(s); or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, § 1324.**

1    **AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS**

2        I, Wenceslao Partida, United States Border Patrol BPA ("BPA"), United States

3    Border Patrol ("USBP"), after being duly sworn, state:

4                    **INTRODUCTION**

5        1.    I make this affidavit in support of an application for search warrants to

6    search the following target property, as further described in Attachments A-1 and A-2

7    (collectively referred to herein as the "**Target Telephones**"), and seize evidence of

8    violations of federal law, namely 8 U.S.C. § 1324, as further described in Attachments

9    B-1 and B-2:

10          One black Google Phone
       Model: Pixel G-2PW2100

11          IMEI No: N/A

12          FP&F Number: 2019255200015401
       Line Item: 008

13          **(Target Telephone #1)**

14          One Silver iPhone

15          Model: A1522
       IMEI No: 355877068417577

16          FP&F Number: 2019255200015401

17          Line Item: 009
       **(Target Telephone #2)**

18

19   This search supports an investigation and prosecution of Vikram Anilkumar DESAI

20   ("DESAI") and Christopher Lee KETTLER ("KETTLER") for the offense above.  A

21   factual explanation supporting probable cause follows.

22       2.    The **Target Telephones** was seized on July 18, 2019, at the time that

23   DESAI (**Target Telephone #2**) and KETTLER (**Target Telephone #1**) were arrested

24   for transporting illegal aliens, in violation of 8 U.S.C. § 1324. **Target Telephone**, as

25   described in Attachments A-1 and A-2 (incorporated herein by reference). The **Target**

26   **Telephones** are currently in the possession of the Department of Homeland Security,

27   El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial,

28   California 92251, and located in the evidence room of that office.

3.      I seek authority to search the **Target Telephones** for, and to seize evidence of, crimes, specifically, the transportation of illegal aliens in violation of 8 U.S.C. § 1324, as described in Attachments B-1 and B-2 (incorporated herein by reference).

4.      Based on the information below, there is probable cause to believe **Target Telephones** were used by DESAI and KETTLER to communicate with each other and other co-conspirators during an alien smuggling event, which occurred in the Southern District of California, and the device contain evidence relating to violations of 8 U.S.C. § 1324.

5.      Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Rather, it contains only those facts that are necessary to establish probable cause for the requested warrant.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

5.      I am a BPA with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 08, 2008, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

6.      I am currently assigned to the El Centro Sector Prosecutions Unit.  The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. The El Centro Sector Prosecutions Unit is also

1  tasked with investigating narcotics smuggling and bulk cash smuggling as it relates to
2  the presentation of these cases in federal jurisdictions.

3       7.     Through the course of my training, investigations, and conversations with
4  other law enforcement personnel, I am aware that it is a common practice for alien
5  smugglers to work in concert with other individuals and to do so by utilizing cellular
6  telephones and portable radios to maintain communications with co-conspirators in
7  order to further their criminal activities. I am also aware that it is a common practice for
8  alien smugglers to communicate with the smuggled aliens regarding smuggling
9  arrangements and payment utilizing cellular telephones and portable radios.
10  Conspiracies involving alien smuggling generate many types of evidence including, but
11  not limited to, cellular phone-related evidence such as voicemail and text messages
12  referring to the arrangements of travel and payment, names, photographs, text
13  messages, and phone numbers of co-conspirators and aliens to be smuggled.

14       8.     In preparing this affidavit, I have conferred with other BPAs and law
15  enforcement personnel who are experienced in the area of alien smuggling
16  investigations, and the opinions stated below are shared by them. Further, I have
17  personal knowledge of the following facts, or have had them related to me by persons
18  mentioned in this affidavit.

19       9.     Based upon my training and experience as a USBP BPA, and consultations
20  with other law enforcement officers experienced in alien smuggling investigations, and
21  all the facts and opinions set forth in this affidavit, I submit the following:

22          a.     Alien smugglers will use cellular telephones because they are
23                mobile and they have instant access to telephone calls, text, web,
24                and voice messages.

25          b.     Alien smugglers will use cellular telephones because they are able
26                to actively monitor the progress of the illegal aliens while they are
27                in transit.

28

c.  Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

d.  Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

e.  Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

f.  Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

g.  The use of cellular telephones by alien smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to, emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10.  Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that device.

11.  Additionally, based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs

from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience investigating these conspiracies, I have learned that searches of cellular/mobile telephones and/or other mobile communication devices yields evidence:

   a.   tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

   b.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

   d.   tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

   e.   tending to identify the user of, or persons with control over or access to, the target phone(s); or

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12.   On July 18, 2019, BPA S. Record received a report over the service radio of a vehicle stuck north of Plaster City along the railroad tracks. The report stated that

1   there were several individuals around the vehicle and that they were believed to be
2   illegal aliens.

3       13.     These train tracks run along a sandy unpaved road which is often used by
4   alien smugglers as it provides a circumvention route around the Highway 86 Border
5   Patrol Checkpoint. This road runs in a north-south direction between the Evan Hewes
6   Highway and Split Mountain Road, which eventually leads to Highway 78 north of the
7   Highway 86 checkpoint. Smugglers often use this route to move contraband between
8   the Imperial Valley and the San Diego area.

9       14.     BPA Record responded to the location approximately 11 miles north of
10   Evan Hewes Highway and north of Plaster City where he located a GMC Yukon stuck
11   in soft sand near the railroad tracks. BPA Record observed a driver and a passenger
12   sitting in the front seats. He also observed five individuals walking north along the
13   railroad tracks away from the vehicle.

14       15.     BPA C. Perez drove to the location of the five individuals and BPA Record
15   approached the two individuals who remained in the vehicle. BPA Record approached
16   the vehicle and identified himself as a United States Border Patrol Agent and observed
17   a third individual in the rear seat of the vehicle.

18       16.     BPA Record performed an immigration inspection on each of these three
19   individuals. One subject was seated at the driver seat and was identified as DESAI, a
20   United States citizen. A second subject was seated in the front passenger seat and was
21   identified as KETTLER, a United States citizen. A third subject was seated in the rear
22   of the vehicle and was identified as LOPEZ, a citizen of Mexico. DESAI and KETTLER
23   were placed under arrest. During a search incident to the arrest of DESAI, Agent Record
24   seized **Target Device #2**. During a search incident to the arrest of KETTLER, Agent
25   Record seized **Target Device #1**.[1]

26
27   [1]     On the date of arrest, seizing Agent Record completed separate reports that
     **Target Device #1** was seized from KETTLER and **Target Device #2** was seized
28   incident to the arrest of DESAI. However, agents do not recall if the Target Devices
     were seized from DESAI and KETTLER's persons or the vehicle.

17.   BPA Perez performed an immigration check on each of the five individuals:   Juan   Carlos   GUTIERREZ-Chaparro   (GUTIERREZ),   Manuel HERNANDEZ-Perez (HERNANDEZ), Jose Luis JIMENEZ-Sanchez (JIMENEZ), Kevin Alejandro MORENO-Silvestre (MORENO), and Daniel PALMA-Cruz (PALMA) and determined each was a citizen and National of Mexico illegally present in the United States, having no immigration documents permitting them to enter, reside, or work legally in the United States.  The five individuals were placed under arrest as illegal aliens.

18.   After a brief field interview of LOPEZ, BPA Record determined she was an illegal alien who was being smuggled in the GMC Yukon, along with the other five illegal aliens. BPA Record further determined that the GMC Yukon was being operated by DESAI with KETTLER riding as a passenger and that they were attempting to smuggle the six illegal aliens around the checkpoint further into the United States.  BPA Record placed DESAI and KETTLER under arrest for their involvement in alien smuggling. BPA Record seized the vehicle as it was used to smuggle the illegal aliens.

19.   KETTLER elected to waive his *Miranda* rights and gave a statement. KETTLER stated that DESAI picked him up that morning to go off-roading. KETTLER stated that he had a telephone with him at the time of arrest, although he was not asked to identify the **Target Devices**, but that he was not using it because the battery was dead. KETTLER also stated that DESAI had a telephone on him and took multiple phone calls while they were off-roading and stopped to pick up a group of people they encountered in the middle of nowhere. KETTLER explained that the vehicle then became stuck, and that he should have told DESAI it was a bad idea to pick up the group.

20.   LOPEZ and GUTIERREZ identified DESAI and KETTLER as the driver and passenger but claimed that they made no smuggling arrangements and happened by the men while walking through the desert. The other four illegal aliens, JIMENEZ, PALMA, MORENO, and HERNANDEZ also identified DESAI and KETTLER and

7

explained that they had illegally entered the United States and DESAI and KETTLER picked them up from a motel stash house that morning and were transporting them to their next destination.

21.     On August 15, 2019, DESAI and KETTLER waived indictment and were charged in a six-count Information with Transportation of Certain Aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). *United States v. Desai*, 19-CR-03131-AJB, ECF No. 27. On August 29, 2019, KETTLER plead guilty to one count of transportation of certain aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). *Id.* at ECF No. 37.

22.     Finally, based on my training and experience, I know that alien-smuggling conspiracies generally entail planning that includes efforts to evade detection by law enforcement. In my professional training and experience, I am aware alien smuggling requires planning and coordination in the days and weeks prior to the relevant smuggling event. Additionally, I am aware that co-conspirators are often unaware of a subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. Accordingly, I request permission to search the **Target Telephones** for data beginning from April 18, 2019 through July 19, 2019, the after DESAI and KETTLER's arrests.

## METHODOLOGY

23.     It is not possible to determine, merely by knowing the cellular telephones' make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered

8

1  in a secure environment or, if possible, started in "flight mode" which disables access
2  to the network. Unlike typical computers, many cellular telephones do not have hard
3  drives or hard drive equivalents and store information in volatile memory within the
4  device or in memory cards inserted into the device. Current technology provides some
5  solutions for acquiring some of the data stored in some cellular telephone models using
6  forensic hardware and software. Even if some of the stored information on the device
7  may be acquired forensically, not all of the data subject to seizure may be so acquired.
8  For devices that are not subject to forensic data acquisition or that have potentially
9  relevant data stored that is not subject to such acquisition, the examiner must inspect
10 the device manually and record the process and the results using digital photography.
11 This process is time and labor intensive and may take weeks or longer.

12     24.    Following the issuance of this warrant, I will collect the subject cellular
13 telephone and subject it to analysis. All forensic analysis of the data contained within
14 the telephone and memory card(s) will employ search protocols directed exclusively to
15 the identification and extraction of data within the scope of this warrant.

16     25.    Based on the foregoing, identifying and extracting data subject to seizure
17 pursuant to this warrant may require a range of data analysis techniques, including
18 manual review, and, consequently, may take weeks or months. The personnel
19 conducting the identification and extraction of data will complete the analysis within
20 90 days, absent further application to this Court.

21             **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

22     26.    Law enforcement has not yet attempted to obtain the evidence sought by
23 this warrant.

24                       **CONCLUSION**

25     27.    Based on all of the facts and circumstances described above, there is
26 probable cause to conclude that DESAI and KETTLER used **Target Telephones** to
27 facilitate the transportation of illegal aliens in violation of 8 U.S.C. § 1324, and that
28

evidence of that illegal activity committed by DESAI and KETTLER and other co-conspirators continues to exists on the **Target Telephones**.

28.     WHEREFORE, I request that the court issue warrants authorizing law enforcement BPAs and/or other federal and state law enforcement officers to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachments B-1 and B-2, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____

Wenceslao Partida

U.S. Border Patrol BPA

Subscribed and sworn to before me this ___19th___ day of December, 2019.

Honorable Ruth Bermudez Montenegro

United States Magistrate Judge

## ATTACHMENT A-1 (Target Telephone #1)

One black Google Phone
**Model:** Pixel G-2PW2100
**IMEI No:** N/A
**FP&F Number:** 2019255200015401
**Line Item:** 008





**Target Telephone #1** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B-1

### ITEM TO BE SEIZED

Authorization to search the **Target Telephone #1** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone #1** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 18, 2019 through July 19, 2019:

a.   tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d.   tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the target phone(s); or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, § 1324.**

## **ATTACHMENT A-2 (Target Telephone #2)**

One silver IPhone
**Model:** A1522
**IMEI No:** 355877068417577
**FP&F Number:** 2019255200015401
**Line Item:** 009



**Target Telephone #2** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B-2

## ITEM TO BE SEIZED

Authorization to search the **Target Telephone #2** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone #2** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 18, 2019 through July 19, 2019:

a.   tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b.   tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d.   tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the target phone(s); or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, § 1324.**

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

for the

Southern District of California

DEC 19 2019

CL
SOUTH.
BY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

One black Google Phone
Model: Pixel G-2PW2100
FP&F # 2019255200015401, Line Item 008

Case No. **19 MJ 11929**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1, incorporated herein by reference

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B-1, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Transportation of Certain Illegal Aliens |

The application is based on these facts:

See attached Affidavit of Agent Wenceslao Partida, U.S. Border Patrol

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Agent Wenceslao Partida, U.S. Border Patrol
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/19/19__

_____
*Judge's signature*

City and state: El Centro, CA

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1 (Target Telephone #1)

One black Google Phone
**Model:** Pixel G-2PW2100
**IMEI No:** N/A
**FP&F Number:** 2019255200015401
**Line Item:** 008





**Target Telephone #1** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B-1

ITEM TO BE SEIZED

Authorization to search the **Target Telephone #1** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone #1** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 18, 2019 through July 19, 2019:

a. tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

b. tending to identify other facilities, storage devices, or services--such as email addresses, IP addresses, phone numbers--that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

d. tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the target phone(s); or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 8, United States Code, § 1324.**

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANTS

I, Wenceslao Partida, United States Border Patrol BPA ("BPA"), United States Border Patrol ("USBP"), after being duly sworn, state:

## INTRODUCTION

1.     I make this affidavit in support of an application for search warrants to search the following target property, as further described in Attachments A-1 and A-2 (collectively referred to herein as the **"Target Telephones"**), and seize evidence of violations of federal law, namely 8 U.S.C. § 1324, as further described in Attachments B-1 and B-2:

> One black Google Phone
> Model: Pixel G-2PW2100
> IMEI No: N/A
> FP&F Number: 2019255200015401
> Line Item: 008
> **(Target Telephone #1)**
>
> One Silver iPhone
> Model: A1522
> IMEI No: 355877068417577
> FP&F Number: 2019255200015401
> Line Item: 009
> **(Target Telephone #2)**

This search supports an investigation and prosecution of Vikram Anilkumar DESAI ("DESAI") and Christopher Lee KETTLER ("KETTLER") for the offense above.  A factual explanation supporting probable cause follows.

2.     The **Target Telephones** was seized on July 18, 2019, at the time that DESAI **(Target Telephone #2)** and KETTLER **(Target Telephone #1)** were arrested for transporting illegal aliens, in violation of 8 U.S.C. § 1324. **Target Telephone**, as described in Attachments A-1 and A-2 (incorporated herein by reference). The **Target Telephones** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

1

3.      I seek authority to search the **Target Telephones** for, and to seize evidence of, crimes, specifically, the transportation of illegal aliens in violation of 8 U.S.C. § 1324, as described in Attachments B-1 and B-2 (incorporated herein by reference).

4.      Based on the information below, there is probable cause to believe **Target Telephones** were used by DESAI and KETTLER to communicate with each other and other co-conspirators during an alien smuggling event, which occurred in the Southern District of California, and the device contain evidence relating to violations of 8 U.S.C. § 1324.

5.      Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Rather, it contains only those facts that are necessary to establish probable cause for the requested warrant.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

5.      I am a BPA with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 08, 2008, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

6.      I am currently assigned to the El Centro Sector Prosecutions Unit.  The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. The El Centro Sector Prosecutions Unit is also

2

1  tasked with investigating narcotics smuggling and bulk cash smuggling as it relates to
2  the presentation of these cases in federal jurisdictions.

3      7.     Through the course of my training, investigations, and conversations with
4  other law enforcement personnel, I am aware that it is a common practice for alien
5  smugglers to work in concert with other individuals and to do so by utilizing cellular
6  telephones and portable radios to maintain communications with co-conspirators in
7  order to further their criminal activities. I am also aware that it is a common practice for
8  alien smugglers to communicate with the smuggled aliens regarding smuggling
9  arrangements and payment utilizing cellular telephones and portable radios.
10  Conspiracies involving alien smuggling generate many types of evidence including, but
11  not limited to, cellular phone-related evidence such as voicemail and text messages
12  referring to the arrangements of travel and payment, names, photographs, text
13  messages, and phone numbers of co-conspirators and aliens to be smuggled.

14      8.     In preparing this affidavit, I have conferred with other BPAs and law
15  enforcement personnel who are experienced in the area of alien smuggling
16  investigations, and the opinions stated below are shared by them. Further, I have
17  personal knowledge of the following facts, or have had them related to me by persons
18  mentioned in this affidavit.

19      9.     Based upon my training and experience as a USBP BPA, and consultations
20  with other law enforcement officers experienced in alien smuggling investigations, and
21  all the facts and opinions set forth in this affidavit, I submit the following:

22          a.     Alien smugglers will use cellular telephones because they are
23          mobile and they have instant access to telephone calls, text, web,
24          and voice messages.

25          b.     Alien smugglers will use cellular telephones because they are able
26          to actively monitor the progress of the illegal aliens while they are
27          in transit.

28

    c.      Alien smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

    d.      Alien smugglers will use cellular telephones to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens.

    e.      Alien smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of USBP checkpoints.

    f.      Alien smugglers will use cellular telephones to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

    g.      The use of cellular telephones by alien smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to, emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10.    Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that device.

11.    Additionally, based upon my training and experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs

from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience investigating these conspiracies, I have learned that searches of cellular/mobile telephones and/or other mobile communication devices yields evidence:

      a.      tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

      b.      tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to bring into the United States and transport undocumented aliens within the United States;

      c.      tending to identify co-conspirators, criminal associates, or others involved in bringing into the United States and transporting undocumented aliens within the United States;

      d.      tending to identify travel to or presence at locations involved in the transportation of undocumented aliens, such as stash houses, load houses, or delivery points;

      e.      tending to identify the user of, or persons with control over or access to, the target phone(s); or

      f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12.    On July 18, 2019, BPA S. Record received a report over the service radio of a vehicle stuck north of Plaster City along the railroad tracks. The report stated that

1  there were several individuals around the vehicle and that they were believed to be
2  illegal aliens.

3      13.    These train tracks run along a sandy unpaved road which is often used by
4  alien smugglers as it provides a circumvention route around the Highway 86 Border
5  Patrol Checkpoint. This road runs in a north-south direction between the Evan Hewes
6  Highway and Split Mountain Road, which eventually leads to Highway 78 north of the
7  Highway 86 checkpoint. Smugglers often use this route to move contraband between
8  the Imperial Valley and the San Diego area.

9      14.    BPA Record responded to the location approximately 11 miles north of
10 Evan Hewes Highway and north of Plaster City where he located a GMC Yukon stuck
11 in soft sand near the railroad tracks. BPA Record observed a driver and a passenger
12 sitting in the front seats. He also observed five individuals walking north along the
13 railroad tracks away from the vehicle.

14     15.    BPA C. Perez drove to the location of the five individuals and BPA Record
15 approached the two individuals who remained in the vehicle. BPA Record approached
16 the vehicle and identified himself as a United States Border Patrol Agent and observed
17 a third individual in the rear seat of the vehicle.

18     16.    BPA Record performed an immigration inspection on each of these three
19 individuals. One subject was seated at the driver seat and was identified as DESAI, a
20 United States citizen. A second subject was seated in the front passenger seat and was
21 identified as KETTLER, a United States citizen. A third subject was seated in the rear
22 of the vehicle and was identified as LOPEZ, a citizen of Mexico. DESAI and KETTLER
23 were placed under arrest. During a search incident to the arrest of DESAI, Agent Record
24 seized **Target Device #2**. During a search incident to the arrest of KETTLER, Agent
25 Record seized **Target Device #1**.[1]

26

27 [1]    On the date of arrest, seizing Agent Record completed separate reports that
**Target Device #1** was seized from KETTLER and **Target Device #2** was seized
28 incident to the arrest of DESAI. However, agents do not recall if the Target Devices
were seized from DESAI and KETTLER's persons or the vehicle.

17.   BPA Perez performed an immigration check on each of the five individuals: Juan Carlos GUTIERREZ-Chaparro (GUTIERREZ), Manuel HERNANDEZ-Perez (HERNANDEZ), Jose Luis JIMENEZ-Sanchez (JIMENEZ), Kevin Alejandro MORENO-Silvestre (MORENO), and Daniel PALMA-Cruz (PALMA) and determined each was a citizen and National of Mexico illegally present in the United States, having no immigration documents permitting them to enter, reside, or work legally in the United States. The five individuals were placed under arrest as illegal aliens.

18.   After a brief field interview of LOPEZ, BPA Record determined she was an illegal alien who was being smuggled in the GMC Yukon, along with the other five illegal aliens. BPA Record further determined that the GMC Yukon was being operated by DESAI with KETTLER riding as a passenger and that they were attempting to smuggle the six illegal aliens around the checkpoint further into the United States. BPA Record placed DESAI and KETTLER under arrest for their involvement in alien smuggling. BPA Record seized the vehicle as it was used to smuggle the illegal aliens.

19.   KETTLER elected to waive his *Miranda* rights and gave a statement. KETTLER stated that DESAI picked him up that morning to go off-roading. KETTLER stated that he had a telephone with him at the time of arrest, although he was not asked to identify the **Target Devices**, but that he was not using it because the battery was dead. KETTLER also stated that DESAI had a telephone on him and took multiple phone calls while they were off-roading and stopped to pick up a group of people they encountered in the middle of nowhere. KETTLER explained that the vehicle then became stuck, and that he should have told DESAI it was a bad idea to pick up the group.

20.   LOPEZ and GUTIERREZ identified DESAI and KETTLER as the driver and passenger but claimed that they made no smuggling arrangements and happened by the men while walking through the desert. The other four illegal aliens, JIMENEZ, PALMA, MORENO, and HERNANDEZ also identified DESAI and KETTLER and

1   explained that they had illegally entered the United States and DESAI and KETTLER
2   picked them up from a motel stash house that morning and were transporting them to
3   their next destination.

4       21.    On August 15, 2019, DESAI and KETTLER waived indictment and were
5   charged in a six-count Information with Transportation of Certain Aliens, in violation
6   of 8 U.S.C. § 1324(a)(1)(A)(ii). *United States v. Desai*, 19-CR-03131-AJB, ECF No.
7   27. On August 29, 2019, KETTLER plead guilty to one count of transportation of
8   certain aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). *Id.* at ECF No. 37.

9       22.    Finally, based on my training and experience, I know that alien-smuggling
10   conspiracies generally entail planning that includes efforts to evade detection by law
11   enforcement. In my professional training and experience, I am aware alien smuggling
12   requires planning and coordination in the days and weeks prior to the relevant
13   smuggling event. Additionally, I am aware that co-conspirators are often unaware of a
14   subject's arrest and will continue to attempt to communicate with the subject after the
15   arrest to determine the whereabouts of their valuable cargo, particularly in the hours
16   following the arrest. Accordingly, I request permission to search the **Target**
17   **Telephones** for data beginning from April 18, 2019 through July 19, 2019, the after
18   DESAI and KETTLER's arrests.

19              **METHODOLOGY**

20       23.    It is not possible to determine, merely by knowing the cellular telephones'
21   make, model and serial number, the nature and types of services to which the device is
22   subscribed and the nature of the data stored on the device. Cellular devices today can
23   be simple cellular telephones and text message devices, can include cameras, can serve
24   as personal digital assistants and have functions such as calendars and full address books
25   and can be mini-computers allowing for electronic mail services, web services and
26   rudimentary word processing. An increasing number of cellular service providers now
27   allow for their subscribers to access their device over the internet and remotely destroy
28   all of the data contained on the device. For that reason, the device may only be powered

in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24.    Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this Court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

26.    Law enforcement has not yet attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

27.    Based on all of the facts and circumstances described above, there is probable cause to conclude that DESAI and KETTLER used **Target Telephones** to facilitate the transportation of illegal aliens in violation of 8 U.S.C. § 1324, and that

1  evidence of that illegal activity committed by DESAI and KETTLER and other co-
2  conspirators continues to exists on the **Target Telephones**.

3       28.    WHEREFORE, I request that the court issue warrants authorizing law
4  enforcement BPAs and/or other federal and state law enforcement officers to search the
5  items described in Attachments A-1 and A-2, and seize the items listed in Attachments
6  B-1 and B-2, using the methodology described above.

7       I swear the foregoing is true and correct to the best of my knowledge and belief.

8
9
10                              Wenceslao Partida
11                              U.S. Border Patrol BPA
12
13
14  Subscribed and sworn to before me this _____ day of December, 2019.
15
16
17  Honorable Ruth Bermudez Montenegro
18  United States Magistrate Judge
19
20
21
22
23
24
25
26
27
28

                                    10

## ATTACHMENT A-1 (Target Telephone #1)

One black Google Phone
**Model:** Pixel G-2PW2100
**IMEI No:** N/A
**FP&F Number:** 2019255200015401
**Line Item:** 008





**Target Telephone #1** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.